## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA,**
                Plaintiff,

v.                                                    CRIMINAL NO. 04-10017-GAO

**WILLIAM SMALLWOOD**
                Defendant

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING AND MOTION
## FOR DOWNWARD DEPARTURE

Defendant William Smallwood submits this memorandum and motion for downward departure to assist the court in sentencing in this criminal contempt case.

## I. ISSUES PRESENTED

This complex sentencing presents the following issues:

(A) What is the role of the sentencing guidelines in this case in light of the Supreme Court's decision in <u>United States v. Booker</u>, 2005 LEXIS 628 (Jan. 12, 2005)?

(B) Given that Mr. Smallwood's failure to testify was in good faith, is the most analogous offense "failure to appear as a material witness"?

(C)  If this Court determines that the most analogous offense instead is obstruction of justice, should Mr. Smallwood's offense level be enhanced?

(1) Specifically, should the offense level be increased by three points for "substantial interference with the administration of justice"?

(2) Should the offense be cross-referenced to the accessory after the fact guideline?

(3) Should the offense level be increased by four points because Mr. Smallwood knew or should have known that his co-defendant possessed eight to fourteen firearms?

(D) Should the court downwardly depart from the guidelines sentence?

(1) Specifically, does Mr. Smallwood's criminal history category overstate the severity of his criminal history?

(2) Does punishment for his federal contempt offense inappropriately duplicate punishment for his related state court offense?

(3) Should Mr. Smallwood's sentence be reduced because this proceeding has forced him to remain in state custody despite being eligible for parole?

(E) Pursuant to <u>Booker</u>, should this Court reduce Mr. Smallwood's guidelines sentence so that it better serves the purposes enumerated in 18 U.S.C.A. § 3553(a)?

## II. BACKGROUND

This case is extensively fused with a state court conviction for which Mr. Smallwood served a 2.5- to 3-year sentence.[1] On July 19, 2001, Mr. Smallwood and his state-court codefendant, Jason Brown, were arrested in Salisbury, Massachusetts, in connection with a shooting. PSR at ¶ 10. A firearm located in the car driven by Mr. Brown was traced to his purchase of several firearms in Georgia a few days earlier. PSR at ¶ 13. Both defendants were charged with the shooting, and Mr. Smallwood

---

[1] Mr. Smallwood was paroled within the past three weeks.

2

pleaded guilty on a joint venture theory. PSR at ¶ 15. Mr. Brown's state charges were dismissed after his case was adopted for federal prosecution. Id.

In March 2003, Mr. Smallwood was subpoenaed to appear before a federal grand jury investigating Mr. Brown's firearms activities, including the purchase in Georgia. PSR at ¶ 19. The government also sought to question him about Jason Brown's father, Dennis Brown, and Dennis's role in purchasing and transporting firearms. Mr. Smallwood was appointed counsel and received immunity for his testimony.

On April 2, 2003, Mr. Smallwood was called before the grand jury but refused to testify. PSR at ¶ 21. On that day, the district court found Mr. Smallwood in civil contempt of its order to testify. Id. Ultimately, the court ordered that he be held in federal custody until he complied with the order or until the term of the grand jury expired, whichever came first. Id. He was held in federal custody for nearly ten months, until the grand jury completed its term, and was released on January 26, 2004. PSR at ¶ 24.

Mr. Smallwood suffers from Attention Deficit Disorder. See Smallwood Affidavit (attached hereto). As noted in the PSR, he is "easily distracted and . . . requires constant attention to remain focused." PSR at ¶ 102. The Probation Department recognized that his attention span problems have affected his work history, education, and personal relationships. At the age of 24, Mr. Smallwood has held more than eighteen short-term jobs; the reasons cited for his quitting include boredom and "frustration due to his short attention span." PSR at ¶ 106. Before dropping out of school, he manifested "behavior problems" that included threatening and abusive

behavior. PSR at ¶¶ 100-103. Mr. Smallwood has a history of mental illness, including Conduct Disorder and Major Depression, requiring hospitalization and medication. PSR at ¶ 92.

Additional factual background is discussed in connection with each argument presented in this memorandum, infra.

### III.    ARGUMENT

**A.    Under United States v. Booker, the sentencing guidelines are merely advisory.**

In United States v. Booker, 2005 LEXIS 628 (Jan. 12, 2005), the Supreme Court completed the dramatic overhaul of the federal sentencing landscape that it initiated in Apprendi v. New Jersey, 530 U.S. 466 (2000), and continued in Blakely v. Washington, 124 S.Ct. 2531 (2004).   In the first part of the Booker opinion, delivered by Justice Stevens, the Court held that the Sixth Amendment is violated when a federal guidelines sentence is based on the judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant.  Id. at *49.  In the second part of the opinion, delivered by Justice Breyer, the Court held that 18 U.S.C. § 3553(b)(1), which makes the guidelines mandatory, must be severed and excised from the Sentencing Reform Act of 1984 (SRA).  Id. at *51-52.

The modified SRA makes the guidelines effectively advisory; it requires a sentencing court to consider guidelines ranges, see 18 U.S.C. § 3553(a)(4), but permits it to tailor the sentence in light of other statutory concerns.  Id. at *81.  These concerns include reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence, protecting the public, and

effectively providing the defendant with needed educational or vocational training and medical care. 18 U.S.C.A. § 3553(a). Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

Thus, Booker directs district courts to consider certain factors that are rejected or ignored by the sentencing guidelines. See United States v. Ranum, 2005 U.S. App. LEXIS 1338 (E.D. Wis., Jan. 19, 2005), at *3-5. Sentencing courts previously were forbidden from considering, inter alia, a defendant's history and characteristics to the extent that they involved his mental and emotional condition, U.S.S.G. § 5H1.3; his education and vocational skills, id. at § 5H1.2; drug or alcohol dependence, id. at § 5H1.2; socioeconomic status, id. at § 5H1.10; or lack of guidance as a youth, id. at § 5H1.12. These factors now can support a sentence outside the guidelines. See Ranum, 2005 U.S. App. LEXIS 1338 at *15-18 (citing defendant's motive, personal history and character in imposing sentence lower than what guidelines suggested); United States v. Myers, 2005 U.S. Dist. LEXIS 1342 (S.D. Iowa, Jan. 26, 2005) at *11-14 (taking into account defendant's personal history, good character, and benign motive for his crime in imposing probation instead of imprisonment).

After Booker, then, a sentencing court must begin by considering the guidelines. See id. at 4. If it chooses to impose a sentence outside the guidelines range, it should provide an explanation for the decision. Id. "But in so doing courts should not follow

the old 'departure' methodology.  The guidelines are not binding, and courts need not

justify a sentence outside of them by citing factors that take the case outside the

'heartland.'"  Id.; see also United States v. Huerta-Rodriguez, 2005 U.S. Dist. LEXIS

1398 (D. Neb. Feb. 1, 2005), at *3 ("Significantly, the Supreme Court neither held, nor

implied, that the measure of reasonableness [in sentencing] is the Guidelines sentencing

range.")

This case is rife with Booker/Blakely concerns.  The indictment to which Mr.

Smallwood pleaded guilty alleges simply that on specified dates, he

> did unlawfully, knowingly and intentionally disobey and resist a lawful
> order, rule, decree and command a Court of the United States of
> America, to wit: an order issued by the United States District Court,
> District of Massachusetts (Gertner, J.), dated April 1, 2003, compelling
> the defendant to testify and provide other information to the grand jury,
> pursuant to Title 18, United States Code, Sections 6002-6003.[2]

Thus, to avoid implicating the Sixth Amendment, Mr. Smallwood's sentence must be

based solely on his refusal to testify before the grand jury.  The government seeks to

increase the sentence beyond that "statutory maximum" based on numerous proposed

judicial findings:[3] that Mr. Smallwood corruptly obstructed justice within the meaning

of 18 U.S.C. § 1503(a); that he was an accessory after the fact to Jason Brown's felony

offenses; that he substantially interfered with the administration of justice by causing

the premature termination of a felony investigation; and that he knew or should have

known that Jason Brown's underlying offense involved 8-14 firearms.  See United

---

[2] The statute under which Mr. Smallwood was convicted contains no maximum penalty.
See 18 U.S.C. § 401(3).

[3] The Blakely court held that "the 'statutory maximum' for Apprendi purposes is the
maximum sentence a judge may impose solely on the basis of the facts reflected in the
jury verdict or admitted by the defendant."  124 S.Ct. at 2537 (emphasis in original).

States v. Crosby, 2005 U.S. LEXIS 1699 (2d Cir. 2005) at **5, 43-44 (remanding case for resentencing under Booker where defendant's firearms sentence was enhanced pursuant to U.S.S.G. § 2K2.1, inter alia.)

Because the sentencing guidelines require the application of analogies and enhancements based on facts that Mr. Smallwood did not admit, their application is merely advisory. See id. at *28; Booker, 2005 LEXIS 628, at *51-52.[4]  Following Booker, then, this Court should begin by determining the guideline range in the usual manner. See United States v. Hughes, 2005 U.S. App. LEXIS 1189 at *10 (4th Cir. 2004). Then it should consider this range, in an advisory capacity, along with the other factors set forth in 18 U.S.C.A. § 3553(a). See id.

**B.    The offense most analogous to Mr. Smallwood's contempt is failure to appear as a material witness, not obstruction of justice.**

The first guidelines issue before this Court is the proper offense level for Mr. Smallwood's contempt. The PSR premises Mr. Smallwood's base offense level on obstruction of justice as the crime most analogous to the contempt to which Mr. Smallwood pleaded guilty. PSR at ¶ 36; U.S.S.G. §§ 2J1.1, 2X5.1. This erroneously presumes that Mr. Smallwood acted in bad faith when he declined to testify before the grand jury. The evidence shows that Mr. Smallwood's decision was motivated not by willful interference with the Browns' prosecution, but by his concern about legal and personal repercussions. Accordingly, the most analogous offense for purposes of determining the base offense level is not obstruction of justice, but failure to appear as a material witness.

---

[4] Booker's remedial scheme also applies to defendants sentenced under the mandatory guidelines who did not suffer a constitutional violation. See id. at 25.

1.    <u>The crime of contempt must be analogized to one of three other offenses.</u>

There is no specific sentencing guideline for the crime of contempt under 18 U.S.C. § 401. The Guidelines direct the Court to apply the "most analogous offense guideline." U.S.S.G. § 2J1.1 (cross-referencing § 2X5.1). The application note to section 2J1.1 explains:

> Because misconduct constituting contempt varies significantly and the nature of the contemptuous conduct, the circumstances under which the contempt was committed, the effect the misconduct had on the administration of justice, and the need to vindicate the authority of the court are highly context-dependent, the Commission has not provided a specific guideline for this offense.

Accordingly, contemptuous conduct yields a continuum of sentencing options, which is "defined by the defendant's conduct and his intent." <u>United States v. Ryan</u>, 964 F. Supp. 526, 529 (D. Mass. 1997).

At one end of the sentencing continuum is obstruction of justice, which is intended for the most culpable of defendants and carries a base offense level of 14. U.S.S.G. § 2J1.2; <u>Ryan</u>, 964 F. Supp. at 529. This guideline is appropriate for a defendant "who not only intended to avoid testifying, but who also sought in bad faith to interfere with an ongoing investigation or prosecution." <u>Ryan</u>, 964 F. Supp. at 529 (citing <u>United States v. Remini</u>, 967 F.2d 754 (2d Cir. 1992)).

The analogous offense at the least culpable end of the continuum is failure to appear as a material witness, which carries a base offense level of 6 when committed with respect to a felony. U.S.S.G. § 2J1.5. This category best addresses those defendants who refused to testify in good faith, including "a defendant who may have feared reprisals, and who, consequently, did not intend to obstruct justice." <u>Ryan</u>, 964 F. Supp. at 529.

In the middle of the continuum is misprision of a felony, for which the base offense level is nine levels less than that of the underlying offense (but in no event is less than 4 or more than 19). U.S.S.G. § 2X4.1. This category includes a defendant who simply refuses to testify without providing a reason for his refusal. Ryan, 964 F. Supp. at 529 (citing United States v. Cefalu, 85 F.3d 964 (2d Cir. 1996)).[5]

2. The most analogous offense to Mr. Smallwood's contemptuous conduct is failure to appear as a material witness.

Mr. Smallwood's refusal to testify was made in good faith because he believed that his testimony might be used against him. The First Circuit addressed similar circumstances in United States v. Underwood, 880 F.2d 612, 620 (1st Cir. 1989). There, the defendant was concerned that his testimony before the district court, even if immunized, would negatively affect the court's decision to accept his plea agreement as well as his sentencing. Id. at 615. The First Circuit reasoned that § 2J1.2 was inapplicable because the defendant did not intend to obstruct justice; rather, he "simply intended not to testify." Id. at 620. Accordingly, it instead applied the base offense level for failure to appear, U.S.S.G. § 2J1.5.

In United States v. Ortiz, 84 F.3d 977 (7th Cir. 1996), the Seventh Circuit followed Underwood in affirming a sentence analogizing the defendant's contempt conviction to failure to appear. The court reasoned that defendant Hurtado's refusal to testify despite a grant of immunity was most analogous to section 2J1.2 because there were "no overt acts in the record which indicate that Hurtado intended to obstruct

---

[5] The elements of misprision of felony are: (1) the principal committed and completed the alleged felony; (2) the defendant had full knowledge of that fact; (3) the defendant failed to notify the authorities; and (4) the defendant took steps to conceal the crime. United States v. Cefalu, 85 F.3d 964, 967 (2d Cir. 1996).

justice, beyond his refusal to testify." Id. at 980 (emphasis added). The court observed that, like Underwood, the defendant "did not intend to obstruct justice. He simply did not wish to testify. As noted during his sentencing, Hurtado didn't want to be known as a 'snitch or an informer.'" Id. at 982. Other decisions have confirmed that failure to appear is the appropriate analogy to contempt based on refusal to testify, even where the defendant's conduct is more culpable than Hurtado's. See, e.g., United States v. Jones, 278 F.3d 711, 716 (7th Cir. 2002) (affirming application of section 2J1.5 even where defendant's failure to testify breached cooperation agreement); United States v. Simmons, 215 F.3d 737, 742 (7th Cir. 2000) (same).

In this case, Mr. Smallwood declined to testify before the grand jury because he was concerned that his testimony would be used against him later, both by his fellow inmates and the government. Like Hurtado, he did not want to be labeled as a "snitch" while serving his prison time. See Smallwood Affidavit. Moreover, Mr. Smallwood was concerned that his grand jury testimony might expose him to a perjury prosecution.[6] Id. He knew that he had been diagnosed with Attention Deficit Disorder and worried that this condition might interfere with his ability to testify clearly and consistently. Id. This evidence establishes that Mr. Smallwood had a good faith belief that he was not lawfully required to testify.

---

[6] Mr. Smallwood's grant of immunity did not, of course, protect him from a future perjury prosecution based on the immunized testimony. See United States v. Apfelbaum, 445 U.S. 115, 131 (1980). Mr. Smallwood recognizes that the possibility of a perjury prosecution is not a substantive defense to his contempt charges. See, e.g., United States v. McDougal, 97 F.3d 1090, 1094 (8th Cir. 1996). Rather, he contends that his concern that his testimony could be used against him is a crucial aspect of his intent at the time he committed the contempt, and hence is relevant to his sentencing under section 2J1.1. See Ryan, 964 F. Supp. at 529.

Moreover, as in <u>Ortiz</u>, there are no overt acts in the record that indicate that Mr. Smallwood "intended to obstruct justice, beyond his refusal to testify."  <u>See</u> <u>Ortiz</u>, 84 F.3d at 980.  He did not attempt to help Brown escape capture, prosecution or punishment.  <u>See id.</u>; compare with <u>Remini</u>, 967 F.2d at 756 (discussed <u>infra</u>).  In the absence of any indicia of bad faith, Mr. Smallwood's concerns make failure to appear the analogous crime to which this Court should look in setting the base offense level. <u>See Ryan</u>, 964 F. Supp. at 529.  This would result in a base offense level of 6 instead of 14.[7]

If this Court applies U.S.S.G. § 2J1.5, Mr. Smallwood's sentence should not be enhanced for "substantial interference with the administration of justice."  <u>See</u> U.S.S.G. § 2J1.5(b) (increasing offense level for failure to appear by three levels).  Contrary to the government's argument, Mr. Smallwood's failure to testify did not result in the premature termination of a felony investigation.  The Probation Office properly rejected this contention in the context of the government's request to enhance the sentence for substantial interference with the administration of justice pursuant to a different guideline, U.S.S.G. § 2J2.1(b)(2).  PSR at ¶ 38.  In declining to recommend this enhancement, the Probation Office noted that indictments were returned against Dennis and Jason Brown and that both of them face "considerable terms of imprisonment." <u>Id.</u>

3.  Mr. Smallwood's contemptuous conduct lacked a corrupt purpose and thus <u>is not analogous to obstruction of justice.</u>

There is no presumption that obstruction of justice will be the analogous offense in a contempt case.  The application note to section 2J1.1 states only that "in certain

_____

[7] In analogizing Mr. Smallwood's contemptuous conduct to obstruction of justice, the Probation Office applied section 2J1.2(c)'s cross-reference to section 2X3.1, Accessory After the Fact, yielding an offense level of 14.  PSR at ¶ 56A.  No such cross-reference applies to failure to appear as a material witness, § 2J1.5.

cases, the [contemptuous] offense conduct will be sufficiently analogous to § 2J1.2 (Obstruction of Justice) for that guideline to apply." U.S.S.G. § 2J1.1, cmt n.1. "Courts cannot be bound to sentence under the Obstruction of Justice Guideline any time they find an intent to obstruct justice." Cefalu, 85 F.3d at 968. "Rather, a court may consider, inter alia, (i) whether the contumacious conduct resembles the offenses listed in the obstruction guideline and (ii) whether the lack of flexibility of the obstruction guideline is suited to adequately punishing the contempt offense." United States v. Brennan, 2005 U.S. App. LEXIS 498, No. 03-1367 (2d Cir. Jan. 12, 2005) at *38 (citing Cefalu, 85 F.3d at 967).

The government's analogy of Mr. Smallwood's contempt to obstruction of justice is simply inapt, as an evaluation of the applicable statutory elements, sentencing guideline and case law makes clear. First, in order to obstruct justice within the meaning of the guidelines, conduct must meet the statutory definition set forth in 18 U.S.C. § 1503(a). United States v. Brady, 168 F.3d 574, 577 (1st Cir. 1999). That section provides: "Whoever . . . corruptly . . . influences, obstructs, or impedes, or endeavors to influence, obstruct or impede, the due administration of justice shall be punished . . ." In the absence of a "corrupt" purpose, neither obstruction nor an endeavor to obstruct violates this statute. Id. at 578.

In the context of a refusal to testify, mere knowledge that the defendant's silence will obstruct justice is insufficient to establish the requisite corruption. Id. Rather, the government must show that the defendant's purpose for refusing to testify was to hinder the grand jury. Id. at 578-79. Here, as shown supra, Mr. Smallwood's purpose was to

avoid being labeled as a snitch in prison and to protect himself from a perjury prosecution, not to hinder the grand jury in its investigation of the Browns.

Moreover, the Sentencing Commission's commentary to section 2J1.2 strongly suggests that the mere failure to answer a question is insufficient to support analogy to the obstruction of justice guideline. See Cefalu, 85 F.3d at 967. The commentary cites the following examples of conduct amounting to obstruction of justice:

> using threats or force to intimidate or influence a juror or federal officer; obstructing a civil or administrative proceeding; stealing or altering court records; unlawfully intercepting grand jury deliberations; obstructing a criminal investigation; obstructing a state or local investigation of illegal gambling; using intimidation or force to influence testimony, alter evidence, evade legal process, or obstruct the communication of a judge or law enforcement officer; or causing a witness bodily injury or property damage in retaliation for providing testimony, information or evidence in a federal proceeding.

U.S.S.G. § 2J1.1, comment. (backg'd). Nowhere in this section does the Commission mention failure to testify. The examples provided all describe "affirmative acts of wrongdoing" rather than the type of omission grounding Mr. Smallwood's contempt. See Brennan, 2005 U.S. App. LEXIS 498 at *38; Cefalu, 85 F.3d at 967.

Moreover, a comparison with the leading case applying section 2J1.2 to contempt, United States v. Remini, 967 F.2d 754 (2d Cir. 1992), makes clear that Mr. Smallwood's refusal to testify warrants a less serious analogy. In Remini, the defendant was prosecuted for contempt after disobeying a court order to testify in the prosecution of organized crime leader Thomas Gambino. 967 F.2d at 754. At sentencing, the court applied section 2J1.2 after determining that "there was an intent to obstruct justice" and not merely an intent not to testify. Id. at 756. The court based this conclusion on a taped conversation in which John Gotti, a Gambino crime family leader, told a third

party that he had instructed his lawyers to "get . . . [Remini's] cell ready. And nobody is taking the stand." Id. The district court explicitly found that "the electronic intercepted conversations between John Gotti and Mr. Remini indicated a lack of good faith on the part of Mr. Remini." Id. No evidence in this case suggests that Mr. Smallwood's contempt was marked by this type of affirmative obstruction.[8]

"The burden of proof [is] upon the government to bring the case within the obstruction guideline." Brady, 168 F.3d at 579. Here, the government has not established the type of affirmative wrongdoing or corrupt intent to support an obstruction of justice analogy. Even if the government had adduced such evidence, here Mr. Smallwood has averred that his intent was merely to protect himself, not to assist the Browns or interfere with their prosecution. At most, the evidence is in equipoise; hence the government does not satisfy its burden. See Ryan, 964 F. Supp. at 531.

C.    **If the Court determines that obstruction of justice is the most analogous crime, Mr. Smallwood's offense level should not be enhanced.**

This section of the sentencing memo is relevant only if the Court rejects Mr. Smallwood's previous argument and applies the obstruction of justice guideline, U.S.S.G. § 2J1.2. As discussed supra, section III(A), the enhancements to section 2J1.2 urged by the government are unconstitutional to the extent that they are mandated by the guidelines, because they are based on allegations to which Mr. Smallwood did not

---

[8] Even if Mr. Smallwood had not offered evidence of good faith motives for his contemptuous conduct, the obstruction of justice guideline still would not apply. Rather, misprision of felony would be the appropriate comparator. See Cefalu, 85 F.3d at 967 (applying misprision guideline where evidence showed neither good faith nor bad faith in refusing to testify); Ryan, 964 F. Supp. at 529 (same). This would result in a base offense level nine levels less than the relevant underlying felony. U.S.S.G. § 2X4.1.

admit.  See Booker at *49.  They are discussed below so that the Court can consider whether it wishes to apply the relevant guidelines in an advisory capacity to enhance the sentence.

One issue that this Court faces before deciding whether to apply the enhancements is the applicable burden of proof.  In the wake of Booker, at least one district court has applied a standard of beyond a reasonable doubt to judicial factfinding.  Huerta-Rodriguez, 2005 U.S. Dist. LEXIS 1398 at *14-15.  In Huerta-Rodriguez, the court held: "In order to comply with due process in determining a reasonable sentence, this court will require that a defendant is afforded procedural protections under the Fifth and Sixth Amendments in connection with any facts on which the government seeks to rely to increase a defendant's sentence."  Id. at *14.  Accordingly, it asks in each enhancement situation "whether a reasonable juror could have found the fact beyond a reasonable doubt."  Id. at *18.

The SRA does not forth a standard of proof; in the absence of appellate guidance, district courts are left to decide this question individually.  Mr. Smallwood urges that this Court adopt the reasonable doubt standard in accordance with Huerta-Rodriguez.  Even under a preponderance standard, however, the evidence supporting the government's proposed enhancements is inadequate.

> 1.  Mr. Smallwood's offense level should not be enhanced by three points because his conduct did not involve "substantial interference with justice."

The government contends that Mr. Smallwood's obstruction of justice offense should be enhanced for "substantial interference with the administration of justice."  See U.S.S.G. § 2J1.2(b)(2) (increasing offense level by three levels).  It argues that Mr.

Smallwood's failure to testify constituted substantial interference because it resulted in the premature termination of a felony investigation.  See id., cmt. n.1.

As the Probation Office recognized, the government was able to investigate and prosecute the Browns despite Mr. Smallwood's failure to testify.  PSR at ¶ 38.  The investigation was successful; it resulted in indictments being returned against both Dennis and Jason Brown, who face "considerable terms of imprisonment."  Id.  No evidence establishes that the investigation was terminated prematurely, much less that such a termination resulted from the absence of Mr. Smallwood's testimony.  Although the government contends that Smallwood has knowledge of the whereabouts of the firearms Brown purchased in Georgia, this is nothing more than an allegation.  Without meaningful supporting evidence, this Court cannot base an enhancement on this ground.

    2.  Mr. Smallwood's offense level should not be increased on the ground that he was an accessory after the fact to Mr. Brown's felony.

If the sentencing court applies the obstruction of justice guideline, it considers whether "the offense involved obstructing the investigation or prosecution of a criminal offense" and the resulting offense level is higher.  U.S.S.G. § 2J1.2(c)(1).  If so, the court applies section 2X3.1, which determines the offense level for the defendant as if he was an accessory after the fact to the underlying offense.  See PSR at ¶ 56A.

In this case, the underlying offense involves Jason Brown, the target of the grand jury investigation.  See PSR at ¶ 47.  Sometime before January of 2004, a superceding indictment was filed against Brown charging him with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1).  The base offense level for this offense was 14.  U.S.S.G. § 2K2.1(a)(6).  This was enhanced by 4 levels because Brown's offense involved 8-24 firearms, and by an additional 4 levels because the

firearm was used in connection with another felony offense (the shooting at the Makos residence). Id. at §§ 2K2.1(b)(1)(B), 2K2.1(b)(5). Thus, the total offense level for the underlying crime as calculated in the PSR was 22. Pursuant to section 2X3.1, the PSR deducted 6 levels from the total offense level of Brown's underlying offense to arrive at an adjusted offense level of 16 for Mr. Smallwood.[9] Id. at ¶ 48. Hence, if sentenced under sections 2J1.2(c)(1) and 2X3.1, Mr. Smallwood would be subjected to an even higher base offense level than if the obstruction of justice guideline had been applied.

To deemed an accessory after the fact for sentencing purposes, a defendant's conduct must meet the definition set forth in 18 U.S.C. § 3: "whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." Ortiz, 84 F.3d at 980. As discussed supra, Mr. Smallwood's intent was not to hinder the case against the Browns. See id. Nor did he effectively relieve, comfort or assist the Browns, given that both were prosecuted and punished. (He was incapable of "receiving" them, given that he was in custody at the time. See id.) The government has not satisfied its burden of proving that Mr. Smallwood's conduct and intent supports the application of the accessory after the fact guideline. Thus, the Court should not apply section 2X3.1's cross-reference.

   3.  Even if section 2X3.1 is applied, Mr. Smallwood's offense level should not be enhanced because he did not know nor had reason to know that Jason Brown possessed between eight and fourteen firearms.

In applying section 2X3.1, the PSR states that Smallwood knew of all the circumstances underlying the calculation of Brown's offense level. Specifically, it

---

[9] The PSR then adjusted Mr. Smallwood's offense level for acceptance of responsibility by deducting three levels, to arrive at a total offense level of 13. See PSR at ¶¶ 54-55.

contends that Smallwood knew that Brown was a felon, that the offense involved 8-24 firearms, and that the firearm was used in connection with another felony.  See PSR at ¶ 47.

Mr. Smallwood's offense level should not be increased by 4 points on the ground he knew or should have known that Jason Brown possessed between 8-14 firearms.  See U.S.S.G. § 2K2.1(b)(1)(B).  The government's contention is based on a complaint and affidavit, filed against Jason Brown in the District Court prior to Mr. Smallwood's refusal to testify before the grand jury, that referenced 13 firearms.  The government argues that because the complaint and affidavit were public records, Mr. Smallwood or his lawyer should have reviewed the documents prior to the defendant's appearance before the grand jury and learned the relevant number of guns involved.

Even assuming that Mr. Smallwood's counsel's knowledge should be imputed to him, this argument fails.  Whether or not Mr. Smallwood knew that the government alleged that 8-14 firearms were involved, no evidence establishes – by either a preponderance or beyond a reasonable doubt – his knowledge that in fact 8-14 firearms were involved.  (Had Mr. Brown been convicted of a firearm offense involving that number of guns at the time of Mr. Smallwood's offense, the government would have a stronger argument.)  Unproven allegations cannot be used to enhance Mr. Smallwood's offense level.

The government also contends that because Mr. Smallwood was with Mr. Brown in Georgia on the day that Brown purchased ten firearms, it is reasonable to infer that the two men transported the weapons back to Massachusetts together, hence that Mr. Smallwood knew the number of firearms.   Here, too, the evidence fails to support

18

this enhancement by a preponderance of the evidence (much less beyond a reasonable doubt).   There simply is nothing to establish that Mr. Smallwood was aware of a specific number of weapons -- or, indeed, of any weapons -- during Brown's transport to Massachusetts.

Should the Court decline to apply 4-level enhancement under 2K2.1(b)(1)(B), Brown's underlying offense level would be reduced from 22 to 18.   Therefore, the cross-reference to the accessory after the fact guideline would no longer apply, since it would not result in a longer sentence than under the obstruction of justice guideline. See U.S.S.G. § 2J1.2(c)(1).   In this situation, Mr. Smallwood properly would be sentenced under section 2J1.2(a) for a base offense level of 14.

**D.     Mr. Smallwood should receive a downward departure to remedy the duplicative impact of his state court sentence.**

Mr. Smallwood should be granted a downward departure on one of two alternate grounds, plus an additional ground:

(a) The Court should depart downward pursuant to U.S.S.G. § 4A1.3(b)(1) to reduce his Criminal History Category from III to I on the ground that Mr. Smallwood's criminal history is unfairly inflated by state court crimes that are deeply intertwined with his present offense.

(b) In the alternative, Mr. Smallwood seeks a departure pursuant to U.S.S.G. § 5K2.0 to prevent improper duplication of the related state sentence he is currently serving.   Under this approach, his guidelines sentence would be reduced by the ten months his state sentence was extended due to his federal contempt judgment.

(c) Finally, Mr. Smallwood requests a separate departure pursuant to section 5K2.0 to shorten his sentence by the number of days elapsed since his parole eligibility date. Each of these requested departures are explained in detail <u>infra</u>.

> 1. Mr. Smallwood's Criminal History Category over-represents his criminal history because it is inflated by state court crimes that are deeply <u>intertwined with his present offense.</u>

As recognized by the probation department, Mr. Smallwood should receive a downward departure pursuant to U.S.S.G. § 4A1.3(b)(1), which encourages departure where reliable information indicates that the category "significantly over-represents the seriousness of the defendant's criminal history." Here, CHC III significantly over-represents the seriousness of Mr. Smallwood's criminal history because five of his six criminal history points are based on the 2001 state firearms offense.[10]

Section 4A1.3(b)(1) departures are "encouraged" under <u>Koon v. United States</u>, 518 U.S. 81 (1996). <u>United States v. Perez</u>, 160 F.3d 87, 89 (1st Cir. 1998). To qualify, the court does not have to find that there is something atypical about the record, in contrast to departures pursuant to Chapter 5 of the Guidelines. <u>United States v. Lacy</u>, 99 F. Supp. 2d 108, 121 (D. Mass. 2000). Specifically, the court does not have to find that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, no

---

[10] In the PSR, three points were added to Mr. Smallwood's criminal history score in connection with the 2001 state firearms offense. PSR at ¶ 61. Two more points were assigned pursuant to U.S.S.G. § 4A1.1(d), which governs where the defendant "committed the instant offense while under any criminal justice sentence." PSR at ¶ 63. This raised his criminal history points from one to six, and increased his Criminal History Category from I to III. PSR at ¶ 65.

adequately taken into consideration by the Sentencing Commission." Id.; 18 U.S.C. § 3553(A)(7)(b).[11]

In this case, a criminal history category of III significantly over-represents the seriousness of Smallwood's criminal history because five of his six criminal history points derive from the state firearms conviction, which is extensively intertwined with the instant federal offense. As set forth in the PSR, the government sought to compel Smallwood's testimony on a number of topics pertinent to the firearms offense, including his role in the armed assault that took place in July 2001 and his role in the acquisition and transport of the firearm used in that assault. PSR at ¶ 140. To take into account the state court offenses grossly inflates criminal history that is generally intended to represent separate, unrelated past crimes. See U.S.S.G. § 4A1.2(a)(2) (providing that "[p]rior sentences imposed in related cases are to be treated as one sentence"); id. at § 4A1.2 cmt. n.1 (defining "prior sentence" as excluding "a sentence for conduct that is part of the instant offense," i.e. relevant conduct).[12]

For the same reasons, Mr. Smallwood's criminal history category over-represents the likelihood that he will commit other crimes. See id. at § 4A1.3(b)(1). Moreover, the interplay between his state offenses and the current federal offense is

---

[11] The statutory authority for the promulgation of U.S.S.G. § 4A1.3 does not reside in 18 U.S.C. § 3553(A)(7)(b), but "in the provision of the Sentencing Reform Act that gives the Commission the authority . . . to take into account, where relevant, the defendant's criminal background." Id. (quoting United States v. Shoupe, 988 F.2d 440, 446 (3rd Cir. 1991)).

[12] As the probation office noted, U.S.S.G. § 4A1.2(a)(2) does not apply to Mr. Smallwood's case. The commentary to that section states that prior sentences are not considered related if they were for offenses that were separated by an intervening arrest. U.S.S.G. § 4A1.2 cmt. n.3. Smallwood's arrest for the state firearms offense took place on July 19, 2001, well before the criminal contempt to which he pleaded guilty.

highly fact-specific and is unlikely to be replicated, given the current disposition of Mr. Brown's prosecution.   In short, incorporating the related state offenses into Mr. Smallwood's criminal history does not accurately represent his future likelihood of recidivism.

Smallwood's criminal history points thus should be reduced from 6 to 1.  The three points assigned in connection with the 2001 state firearms offense should be eliminated, as well as the two points assigned based on the fact that Smallwood committed the instant offense while under a criminal justice sentence.  See U.S.S.G. § 4A1.1(d).  Accordingly, Smallwood's Criminal History Category should be calculated as I, not III.

The PSR suggests that Mr. Smallwood's criminal history points should be reduced only by the two points added pursuant to U.S.S.G. § 4A1.1(d), noting correctly that "the defendant would not have committed the offense while under a criminal justice sentence except that the government compelled his testimony prior to the expiration of his sentence."  Whether his testimony was sought before or after the completion of his state sentence was entirely within the government's control and hence prone to manipulation, even if no bad faith was involved.  Cf. United States v. Sanchez-Rodriguez, 161 F.3d 556, 563-64 (9th Cir. 1998) (departure not prohibited where "arbitrary" timing of charging defendant deprived him of opportunity to serve state sentence concurrently); United States v. Collins, 122 F.3d 1297, 1308 (10th Cir. 1997) (court affirmed downward departure even absent government misconduct where delay in prosecution affected defendant's career offender status);  United States v. Lieberman, 971 F.2d 989, 998 (3d Cir. 1992) (court can depart downward to rectify government's

manipulation of charges and ensure equity between codefendants' charges, even absent bad faith).

Mr. Smallwood agrees that the two points added pursuant to § 4A1.1(d) should be taken off his total, but argues further, for the reasons set forth supra, that all of the points associated with the 2001 firearms offense should be removed. Moreover, as the Probation Office recognized, taking off only two points does not change Mr. Smallwood's sentence, because Criminal History Category III includes those defendants with four, five, or six points. PSR at ¶ 140. Such a limited departure thus would be a nullity.

2. Alternatively, Mr. Smallwood's sentence should be reduced to remedy the extension of his state court sentence that resulted from this federal case.

Should the Court choose not to depart downward pursuant to U.S.S.G. § 4A1.3(b)(1), Mr. Smallwood requests a departure pursuant to section § 5K2.0 to avoid duplicative punishment for his underlying conduct. Mr. Smallwood was held in federal custody for nearly ten months for civil contempt, during which he earned no credit toward his state sentence.[13] Accordingly, his state sentence was extended by that amount of time. This punishment should not be duplicated by his federal sentence in the instant case.

To avoid imposing excessive punishments, district courts are empowered to depart downward pursuant to U.S.S.G. § 5K2.0, which states that "[u]nder 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by

---

[13] Mr. Smallwood was originally eligible for parole on January 18, 2004 (with a maximum release date of July 18, 2004). After his federal custody, his revised date for parole eligibility was November 11, 2004 (adjusted to October 10, 2004, for good time credits earned), with a maximum release date of May 12, 2005 (adjusted to April 22, 2005). See Inmate Sentence Listing, dated July 27, 2004.

23

the applicable guideline, if the court finds that there exists [a] mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." The Supreme Court has expressly held that this provision may be used to rectify duplicative punishment: "The Guidelines retain enough flexibility in appropriate cases to take into account the fact that conduct underlying the offense at issue has previously been taken into account in sentencing for another offense." Witte v. United States, 515 U.S. 389, 405 (1995).[14]

In this case, Mr. Smallwood's refusal to testify before the grand jury underlies both the extension of his state sentence and the present federal offense. In other words, the refusal to testify was "taken into account" in his state sentence for the firearms offense. See id. This removes his case from the heartland of comparable contempt cases.[15]

This Court is empowered to fashion a "fair and reasonable sentence" where departure is warranted. See United States v. Aymelek, 926 F.2d 64, 70 (1st Cir. 1991). "Section 5K2.0 departures are less structured [than section 4A1.3 departures], being bounded in extent only by statutorily prescribed maxima and the general parameters of reasonableness." Id. Here, Mr. Smallwood requests that the Court reduce his sentence by the ten months by which his state sentence was extended.

_____

[14] The purpose of avoiding duplicative punishment also is reflected elsewhere in the guidelines. See, e.g., U.S.S.G. § 5G1.3; United States v. Austin, 239 F.3d 1, 6 (1st Cir. 2001) ("The central purpose of section 5G1.3 . . . is to prevent duplicative punishment.")
[15] Even if this Court determines that these facts do not take Mr. Smallwood's case outside the heartland under U.S.S.G. § 5K2.0, it can still reduce the sentence along similar lines under Booker. See Section III(E), infra.

3.  The sentence should be reduced by the time elapsed since Mr. Smallwood was eligible for parole from his state sentence.

Regardless of which (if any) departure this Court chooses to apply, it should additionally take into account the impact of the delay in the present sentencing.[16] Given Mr. Smallwood's good time credits, his revised date for parole eligibility for his state sentence was October 22, 2004. Had his federal sentencing taken place before that date, as it was originally scheduled, he would have been paroled and immediately begun serving his federal sentence. See U.S.S.G. § 5G1.3(a) (where defendant committed an offense during a term of imprisonment and is sentenced while still subject to an undischarged term, the sentence for the instant offense runs consecutively). His parole was substantially delayed by this federal case remaining open, however, and he remained imprisoned on his state sentence until very recently.

Mr. Smallwood's total time served should not be extended by the scheduling conflicts that occasioned the repeated continuances in this Court. He served more than three additional months beyond his parole eligibility. Accordingly, this Court should depart downward pursuant to U.S.S.G. § 5K2.0 to reduce his federal sentence by the number of days elapsed between October 22, 2004, and his parole date.

**E.    This Court should consider, but not limit itself to, the guideline sentence in crafting a punishment for Mr. Smallwood that hews to the purposes of 18 U.S.C.A. § 3553(a).**

While considering the possible sentences suggested by the guidelines, the Court ultimately must sentence Mr. Smallwood in a way best serves the purposes set forth in 18 U.S.C.A. § 3553(a): reflecting the seriousness of the offense, promoting respect for

---

[16] Mr. Smallwood's sentencing was originally scheduled for September 29, 2004. It was continued, apparently on the court's initiative, to October 14, 2004. Due to calendar conflicts and the release of the Booker decision, the parties assented to additional continuances scheduling the sentencing for March 3, 2005.

the law, providing just punishment, affording adequate deterrence, protecting the public, and effectively providing Mr. Smallwood with needed educational or vocational training and medical care. See Booker, 2005 LEXIS 628 at *81. Moreover, this Court must take into account the nature and circumstances of the offense; Mr. Smallwood's history and characteristics; the kinds of sentences available; the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. Id.

Following Booker, district courts have declined to impose guidelines sentences where those sentences did not sufficiently serve the purposes set out above. In Ranum, a bank fraud case, the sentencing court considered the defendant's benign motive in ordering a sentence below what the guidelines recommended; there, the defendant did not act for personal gain or intend to harm the bank. 2005 U.S. App. LEXIS 1338 at *15-17. The court also cited the defendant's favorable personal characteristics, such as his solid employment history and devotion to his family, in determining that he was not a danger to society and was unlikely to reoffend. Id. It relied on these findings in concluding that the guidelines sentence was much greater than necessary to serve the purposes of the SRA. Id. at *17.

In United States v. Jones, 2005 U.S. Dist. LEXIS 833 (D. Me. Jan. 21, 2005), Judge Hornby considered whether a downward departure was appropriate for a mentally ill defendant convicted of possessing firearms after involuntary commitment to a mental institution. He determined that the guidelines did not authorize a departure, but then held that under Booker, a shorter sentence would better serve the purposes of the SRA.

Id. at *5, 9-10. His decision took into account the defendant's lack of malicious intent in retaining the weapons after his commitment and his post-offense compliance with his treatment plan. Id. at *8, 10; see also United States v. Myers, 2005 U.S. Dist. LEXIS 1342 at *11-14 (taking into account defendant's personal history, good character, and benign motive for his crime in imposing non-guidelines sentence of probation for firearms offense).

In this case, the circumstances of Mr. Smallwood's contempt are extensively tied to his personal history and characteristics, and are not adequately reflected in the guidelines sentence. Mr. Smallwood's Attention Deficit Disorder and other mental health problems have affected every aspect of his life, from his schooling to his employment to his family relationships. See PSR at ¶¶ 92, 100-103, 106; Smallwood affidavit. The PSR notes that he is "easily distracted and . . . requires constant attention to remain focused." PSR at ¶ 102. This aspect of his personal background is a significant part of the context for his criminal contempt and hence should be considered in sentencing. Mr. Smallwood's subjective awareness of his disability led him to worry that testifying would result in unintentional inconsistencies in testimony and expose him to a perjury prosecution. Thus, while Mr. Smallwood's Attention Deficit Disorder does not provide a legal defense for his criminal contempt, it supplies important context for his conduct and should be considered in fashioning his punishment. As in Ranum and Jones, his motive and mental state are significant SRA factors that may not be adequately addressed by the guidelines in this case. Ranum, 2005 U.S. App. LEXIS 1338 at *15-17; Jones, 2005 U.S. Dist. LEXIS 833 at *8-10.

A sentence of six months (less time elapsed since his parole eligibility date) would adequately account for Mr. Smallwood's characteristics and the nature of his offense while still serving the statutory purposes of reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment. See 18 U.S.C.A. § 3553(a); Ranum, 2005 U.S. App. LEXIS 1338 at *17 (sentence of twelve months "was sufficient to promote respect for the law and account for the defendant's serious abuse of trust . . ."). The state sentence Mr. Smallwood recently served was his first imprisonment. He is not seeking to avoid prison time altogether for his federal offense; he acknowledges that his refusal to testify warrants meaningful redress. The unique circumstances of his contempt make it highly unlikely that he will reoffend.[17]

Finally, the Court should recognize that Mr. Smallwood recently has made meaningful and personally unprecedented strides toward rehabilitation. He participated in a substance abuse treatment program while in prison and is interested in continuing treatment after completing his sentence. PSR at ¶98. During his incarceration, he also has earned good time credits for completing courses in Anger Management, Re-Entry/Adjustment, and Pre-Employment/Life Skills. PSR at ¶105. Despite his learning disability, he is interested in completing his GED. PSR at ¶104. Mr. Smallwood and his family members have expressed their commitment to his successful readjustment into the community; further lengthy incarceration would subvert this goal. See PSR at ¶¶79, 86, 93 addendum (letters).

In sum, the objectives of the SRA are best served by a short sentence, even if that requires the Court to sentence him below the range recommended by the guidelines.

---

[17] Moreover, the tremendous disparity in forms of contemptuous conduct, see U.S.S.G. § 2J1.1 (cmt.), means that the statutory purpose of avoiding unwanted sentencing disparities among defendants with similar records is not applicable here.

The parsimony principle demands that Mr. Smallwood's sentence be "sufficient, but not greater than necessary" to comply with the relevant statutory purposes.   See 18 U.S.C.A. § 3553.   Here, a sentence of longer than six months would serve no SRA purpose, and would simply defer his reintegration into lawful society.

## IV.   CONCLUSION

This memorandum presents the Court with multiple possible avenues that arrive at a fair and legal sentence for Mr. Smallwood.  Any of the following options, alone or in combination, would effect 18 U.S.C.A. § 3553(a)'s directive to "impose a sentence sufficient, but not greater than necessary to comply with the purposes" of sentencing:

(1) The Court could impose a base offense level of 6 for failure to appear as a material witness.  With a two-point deduction for acceptance of responsibility and a CHC of I or III, this would result in a 0-6 month sentence.

(2) The Court could apply the obstruction of justice offense guideline, without the cross-reference for accessory after the fact, for a base offense level of 14.  With a two-level deduction for acceptance of responsibility, this would result in a 10-16 month sentence at CHC I or a 15-21 month sentence at CHC III.  This result could also be reached by applying the obstruction of justice offense guideline and cross-reference for accessory after the fact but rejecting the four-point enhancement based on Smallwood's purported knowledge of 8-14 firearms.

(3)  The Court could apply the obstruction of justice offense guideline and cross-reference for accessory after the fact at the offense levels suggested in the PSR, but reduce Mr. Smallwood's CHC to I, thereby resulting in a sentence of 12-18 months.

Alternatively, the Court could reduce Mr. Smallwood's sentence by the 10 months his state sentence was extended for a sentence of 8-14 months.

(4) The Court could decline to follow the sentencing guidelines under the unusual circumstances of Mr. Smallwood's motive and mental disability, and reduce the sentence accordingly.

In addition, as described in section III(D)(3), Mr. Smallwood requests that his sentence be shortened by the number of days elapsed since his parole eligibility date.

WILLIAM SMALLWOOD
By his attorney,

Date: <u>February 10, 2005</u>        /s/ *Randy Gioia*
Randy Gioia
BBO #193480
LAW OFFICE OF RANDY GIOIA
24 School Street- 8th Floor
Boston, MA  021108
(617) 367-2480